```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x

UNITED STATES OF AMERICA

                -against-                        MEMORANDUM & ORDER

CHARLES POWELL, BRIAN CASTRO, and                21-CR-572(EK)
MUSAH COWARD,

                Defendants.

-----------------------------------x
```

ERIC KOMITEE, United States District Judge:

        Defendant Charles Powell has moved to suppress evidence "pertaining to" a given cellular phone, and for a bill of particulars. Similarly, defendant Brian Castro moves to suppress evidence "gathered from" a second cellular phone, and for an order directing the government to meet certain disclosure duties.[1] For the reasons that follow, these motions are denied. Castro's motions pursuant to *Brady v. Maryland* and regarding the exchange of exhibits, *see* Castro Mem., ECF No. 129-1, are denied for the reasons discussed on the record at the May 10, 2024 and December 9, 2024 status conferences.

---

[1] Castro's motion to suppress testimony by Sergeant Daniel Findlay identifying Castro is moot, because the government has informed the court that it does not intend to call Findlay to testify about that identification. ECF No. 135. Powell's motion to dismiss Count Five of the indictment was withdrawn during the March 12, 2024 status conference. Min. Entry (Mar. 12, 2024).

### I.   Powell's Motion to Suppress

Powell moves to "suppress all evidence pertaining to telephone number 973-818-4211 obtained pursuant to a search warrant issued August 18, 2022." Powell Mot., ECF No. 143; Singer Affirmation ¶ 2, ECF No. 143-1.[2]  The asserted basis is that the affidavit submitted in support of the search warrant failed to set forth probable cause. *Id*. ¶ 18.

Officers seized the cell phone in question when they arrested Powell in New Jersey in October 2021, after responding to a car accident in which Powell was injured. *See* Gov. Opp. Mem. 4, ECF No. 146; Savona Aff. as to Powell ¶¶ 21-22, ECF No. 146-1.  In August of the following year, the government sought a warrant for cell phone records associated with the seized iPhone.[3]  *See* Savona Aff. as to Powell ¶ 1.  The warrant application was supported by an affidavit from FBI Special Agent Michael Savona.  *See id.*

The Savona affidavit alleged — generically — the existence of probable cause to believe that Powell and others had committed Hobbs Act robbery (and conspired to do so), violated 18 U.S.C. § 924(c) via the discharge of a firearm

---

[2] In lieu of a memorandum of law arguing in support of his motions, Powell has submitted only the affirmation from his attorney.

[3] Powell does not challenge the length of the delay between the seizure of the phone and the government's application for a warrant. *Cf. United States v. Smith*, 967 F.3d 198, 205-06 (2d Cir. 2020) (outlining the standard governing when law enforcement officials "unreasonably delay in seeking a warrant" to search seized property).

during a crime of violence, and violated 18 U.S.C. § 922(g) by being felons in possession of ammunition. *See id.* ¶ 4. Still, Powell contends, the affiant provided "no factual information to support the claim that a robbery had taken place, that there had been a conspiracy to commit a robbery, or that Mr. Powell had previously been convicted of a felony." Singer Affirmation ¶ 17.

Powell's motion to suppress must be denied, without the need to reach the merits, because he has not established standing to challenge the search.

**A.   Standing**

A defendant's Fourth Amendment rights are violated "only when the challenged conduct invades his legitimate expectation of privacy rather than that of a third party." *United States v. Santillan*, 902 F.3d 49, 62 (2d Cir. 2018).[4] "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978). And it is well established that a defendant must do so through an affidavit or testimony based on personal knowledge, rather than (for example) a lawyer's declaration setting out facts on information and belief. *See*

---

[4] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

*United States v. Dore*, 586 F. App'x 42, 46 (2d Cir. 2014) (citing *United States v. Ruggiero*, 824 F. Supp. 379, 391 (S.D.N.Y. 1993), *aff'd sub nom. United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995)).

Powell has not done so, and this failure — in and of itself — precludes relief. In *Dore*, the Second Circuit affirmed the denial of a defendant's suppression motion because he "did not submit an affidavit establishing that the cell phones in question belonged to him or that he had a subjective expectation of privacy in them" or otherwise "assert a privacy interest in the cell phones." 586 F. App'x at 46. Moreover, "[t]he anticipated argument by the Government at trial that some of the phone numbers belonged to the Defendants does not lend them standing." *United States v. Pizarro*, No. 17-CR-151, 2018 WL 1737236, at *7 (S.D.N.Y. Apr. 10, 2018), *aff'd*, No. 19-2391, 2023 WL 3332539 (2d Cir. May 10, 2023). Singer's affidavit does report additional content from the warrant application: that the FBI agent alleged that the phone was obtained from Powell, and that Powell had previously provided the phone number to the police. *See* Singer Affirmation ¶ 6. But "efforts made by the Government to link [the defendant] to [a] phone" are insufficient to establish the defendant's standing to challenge a warrant permitting the tracking of that phone. *United States v. Filippi*, No. 12-CR-604, 2013 WL 208919, at *6 (S.D.N.Y. Jan.

4

16, 2013).  Thus, Powell has not established a reasonable expectation of privacy in the device.

Fourth Amendment standing is not jurisdictional under Article III.  *E.g.*, *Byrd v. United States*, 584 U.S. 395, 410-11 (2018).  Thus, I proceed to discuss (briefly) the merits of Powell's claim that the affidavit failed to allege probable cause to believe that a Hobbs Act robbery had occurred, and that Powell had previously been convicted of a felony.

**B.    Good-Faith Exception**

Even if Powell did have standing to challenge the warrant, the good-faith exception would preclude suppression.  In addition to alleging probable cause to believe that Powell committed Hobbs Act robbery, the affidavit alleged that Powell violated the felon-in-possession statute, 18 U.S.C. § 922(g).  *See* Savona Aff. as to Powell ¶ 4.  And the agents executing the search were entitled to rely, in good faith, on the warrant.  "[T]he good-faith exception to the exclusionary rule applies when the agents executing a search warrant act with an objectively reasonable good-faith belief that their conduct is lawful."  *United States v. Jones*, 43 F.4th 94, 111 (2d Cir. 2022); *see United States v. Leon*, 468 U.S. 897, 920-21 (1984).  And the instant affidavit here was not so lacking in its articulation of probable cause as to defeat such a good-faith belief.  *See Leon,* 468 U.S. at 923.  This is true of the

5

affidavit's articulation of probable cause on the Section 922(g) violation *and* the Hobbs Act robbery (and conspiracy) violation. The affidavit set forth enough cause to support the application of the good-faith exception on both counts.

On the Section 922(g) front, Powell alleges that Agent Savona's supporting affidavit was deficient because it did not allege a prior felony conviction. Singer Affirmation ¶ 17. But the warrant affidavit alleged that a grand jury had indicted Powell for being a felon in possession of ammunition pursuant to Section 922(g). *See* Savona Aff. as to Powell ¶ 24. And an indictment by "a properly constituted grand jury . . . conclusively determine[s] the existence of probable cause . . . ." *United States v. Drachenberg*, 623 F.3d 122 (2d Cir. 2010). Thus, the affidavit did indicate probable cause for Powell's prior felony conviction: it was an element of an offense for which he was indicted.

Powell also alleges that the supporting affidavit was deficient because it did not allege — at least not explicitly — that a robbery occurred. *E.g.*, Singer Affirmation ¶¶ 8, 17. This may be so. The affidavit described a *shooting* in a gambling parlor, but its factual assertions are surprisingly thin regarding the robbery. Still, the good-faith exception defeats this argument as well.

"The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance on an invalidated warrant." *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011). This is not a high burden. As the Second Circuit has noted, the Supreme Court has "strongly signaled that most searches conducted pursuant to a warrant would likely fall within" the ambit of the exception. *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 267 (1983). And "a court reviewing a challenged warrant — whether at the district or appellate level — must accord considerable deference to the probable cause determination of the issuing magistrate." *Id.* at 93.

Yet good faith alone will not always suffice. The exception does not apply, for example, when an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon,* 468 U.S. at 923. Powell argues that this is the case with the affidavit's assertion of probable cause on the Hobbs Act claim, given the omission of an allegation that a robbery occurred. Singer Affirmation ¶¶ 17-18. The government responds that the robbery is at least implicit in the affidavit. Opp. Mem. 15-16. And it is true that probable cause can be established through "reasonable inference from the facts presented based on common sense and experience." *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004); *see also United States v. Santarsiero*, 566

F. Supp. 536, 539 (S.D.N.Y. 1983) ("The issuing judge is entitled to consider all the facts presented to him and to draw reasonable inferences from those facts based upon his common sense and experience.").

Here, for the reasons set out by the government, the reasonable reader can easily infer at least *some* cause to believe that a robbery occurred.  The affidavit specifically invokes the Hobbs Act robbery statute and alleges a violation thereof, even if it does so in conclusory fashion.  *See* Savona Aff. as to Powell ¶ 4 (asserting that "there is probable cause to believe that" violations including "Hobbs Act robbery and Hobbs Act robbery conspiracy . . . have been committed").  The affidavit goes on to describe the setting of the crime as "an illegal gambling spot where dice and card games were hosted," *id.* ¶ 5, and common sense surely allows for the recognition that illegal gambling operations are cash-intensive businesses.  The affidavit then goes on to say that two of Powell's alleged co-conspirators entered the "illegal gambling spot" with their identities concealed: one with a "hood pulled over his head" and another with "a surgical mask over his face."  *Id.* ¶¶ 5, 9.  These allegations suggest that Powell and his cohort did not enter the premises to gamble.  For these reasons and others, the affidavit cannot be described as totally lacking in probable cause.

No other limitation on the good-faith exception applies. Powell does not suggest that Judge Cho abandoned his judicial role or contend that Agent Savona knew any information in the affidavit was false. *See generally* Singer Affirmation ¶¶ 6-10, 16-19. And he makes no suggestion that the warrant itself was facially deficient. *See Leon*, 468 U.S. at 923. Powell's motion to suppress is denied.

## II.   Castro's Motion to Suppress

Castro, too, challenges the search of a cell phone records associated with a phone number that the government claims he used. Like Powell, he alleges that the affidavit in support of the applicable search warrant failed to state probable cause. We consider his standing and then touch on the merits here as well.

**A.   Standing**

Castro lacks standing because he too has failed to establish a reasonable expectation of privacy in the phone at issue. Castro did file his own sworn declaration, unlike Powell. *See* Decl. of Brian Castro, ECF No. 129-8. Nevertheless, Castro includes no firsthand information at all concerning his relationship to the phone, or any privacy interest therein. Instead, he states that he has "been shown a copy of a search warrant and affidavit for information

9

associated with a cell phone connected to (404) 916-6941, which has been associated with me." *Id.* ¶ 3.[5]

Castro also provided an attorney's declaration, which likewise sets out no material information beyond the four corners of the warrant affidavit itself. *See* Decl. of Gary Kaufman, ECF No. 129-2. Castro's attorney attested that he reviewed "information publicly available through PACER," *id.* ¶ 3, and learned that "[t]he search warrant application" submitted to Judge Levy "links the phone number at issue with Brian Castro." *Id.* ¶ 4.[6]

Again, these submissions are insufficient to establish a Fourth Amendment interest — even taken together. It would be an unusual case in which a law enforcement agent's warrant affidavit contained sufficient personal knowledge to demonstrate that the defendant had a cognizable privacy interest in the searched property. *See, e.g.*, *Filippi*, 2013 WL 208919, at *6 (observation that a phone targeted in a warrant application was

---

[5] The rest of Castro's declaration is similarly second-hand: "I saw that paragraph twelve of the search warrant affidavit . . . states that I was identified in a surveillance video" (¶ 4); "I have been shown testimony from page 82 of a suppression hearing . . . ." (¶ 5); "On page 83 of the same suppression hearing transcript . . . ." (¶ 6).

[6] Agent Savona also attested that "an Accurint background check" that law enforcement conducted on Castro listed (404) 916-6941 as the phone number for "Brian S. Castrogonzales" of Paterson, New Jersey. Savona Aff. as to Castro ¶ 13, ECF No. 129-3. That is the name and city listed on Castro's driver's license. *See* Castro License, ECF No. 145-1. Accurint is a LexisNexis product that searches "public records to help verify identities, conduct investigations, and detect fraud." *See* Accruint, https://www.accurint.com/ (last accessed May 10, 2024).

10

"associated" with defendant was insufficient to establish standing). And this is not that case. Castro and his attorney say that the affidavit "associated" him with the phone at issue. Castro Decl. ¶ 3; Kaufman Decl. ¶¶ 2, 4. Neither Castro nor his counsel alleged personal knowledge of the phone number, or any other basis for a possessory interest. Moreover, Castro cannot claim standing by citing the warrant affidavit and thus the government's theory of the case. Such a claim would amount to "an evisceration of the defendant's burden of proof as established by the Supreme Court." *United States v. Watson*, 404 F.3d 163, 166 (2d Cir. 2005) (quoting *United States v. Singleton*, 987 F.2d 1444, 1449 (9th Cir. 1993)).

Thus, Castro has not carried his burden to establish a "legally cognizable privacy interest" in the cell phone. *Ruggiero*, 824 F. Supp. at 391. He has not, for example, averred that he owned or possessed the phone, *see United States v. Ray*, 541 F. Supp. 3d 355, 379-80 (S.D.N.Y. 2021), or that he subscribed to the phone number in question, *United States v. Valdez*, No. 20-CR-115, 2021 WL 1317548, at *2 n.1 (S.D.N.Y. Apr. 9, 2021).

Castro relies on *United States v. Lewis,* a recent case in which the Second Circuit held that a defendant failed to establish a privacy interest in the ground-floor back porch of a triplex. Castro Reply Mem. 2, ECF No. 145 (citing 62 F.4th 733,

11

741 (2d Cir. 2023)). He specifically invokes the *Lewis* court's observation about what the defendant *did not* do: he "neither pointed to any relevant evidence nor made any arguments pertinent to his reasonable expectation of privacy over the porch." *Id*.[7] But the inverse of the Second Circuit's observation does not logically follow here. The uncontroversial fact that a defendant who fails to adduce relevant evidence or make pertinent arguments will lose his motion does not mean that one who points to *any* relevant evidence or makes *any* pertinent argument will prevail. Certainly nothing in *Lewis* supports that proposition. On the contrary, the panel observed that once the government disputed the defendant's expectation of privacy, the defendant "needed to articulate specific facts regarding the porch and his use of it." *Id.* Like Lewis, Castro has failed to do that here.

As with Powell's motion, we go on to briefly discuss the merits.

**B. Probable Cause and *Franks***

Castro makes two arguments in his motion to suppress. First, he alleges that the warrant was not supported by probable

---

[7] The panel noted that on appeal, the defendant offered evidence of his family's ownership of (and residence in) the searched property, as well as "the particular uses he made of the porch, . . . its proximity to his living area, . . . [its] inaccessib[ility] to visitors of the triplex, [and the] steps he took to maintain his privacy while using it." *Lewis*, 62 F.4th at 741.

12

cause. Castro Mem. 8-11. For the reasons discussed above with respect to Powell, the good faith exception applies here, too.

Second, Castro alleges that the warrant affidavit contained a material omission and a material misstatement, and therefore that the warrant should not have issued. *Id.* at 9-11. He seeks suppression on this basis. *Id.* at 6.

When a warrant is issued, the underlying affidavit is typically entitled to a presumption of validity. *Franks v. Delaware,* 438 U.S. 154, 171 (1978). However, pursuant to *Franks*, "a defendant may contest a warrant by challenging the veracity of the supporting affidavit." *United States v. Powell*, 634 F. Supp. 3d 48, 52 (E.D.N.Y. 2022). "To be entitled to a *Franks* hearing, a defendant must make a substantial preliminary showing of (1) falsity, that a false statement . . . was included by the affiant in the warrant affidavit, (2) knowledge, that the affiant made the allegedly false statement knowingly and intentionally, or with reckless disregard for the truth, and (3) materiality, that the allegedly false statement is necessary to the finding of probable cause." *United States v. Sandalo*, 70 F.4th 77, 85 (2d Cir. 2023) (citing *Franks*, 438 U.S. at 155-56). The defendant's burden on this preliminary showing is "a heavy one that requires more than a mere conclusory showing." *Id.* at 86. And when reviewing a challenge to a warrant, "[o]missions are not subject to the same high level of scrutiny as

13

misstatements." *United States v. Rivera*, 750 F. Supp. 614, 617 (S.D.N.Y. 1990).

Castro sees two problems with the warrant affidavit. First, he sees a *material omission* in the affidavit's reliance on an identification of Castro by Detective Daniel Findlay of the Paterson Police Department. The warrant affidavit said that Findlay knew Castro from, among other things, seeing him at the offices of a joint task force during a prior investigation. Savona Aff. as to Castro ¶ 12, ECF No. 129-3. Castro contends that the affidavit omitted the material fact that "[Detective] Findlay was not connected, in any way, to the [prior] investigation involving Mr. Castro, beyond Mr. Castro briefly passing by him on the way to the interrogation room, with other members of law enforcement." Castro Mem. 10.

This purported omission does not render the warrant affidavit misleading. Castro claims the affidavit leaves the reader with the mistaken impression that Findlay "had a *high level* of familiarity with Mr. Castro, as a result of an investigation that he was personally involved with." *Id.* (emphasis added). But the affidavit makes a more modest claim than that. It states only that Findlay "had become familiar" with Castro through an FBI investigation and "also through prior law enforcement related encounters with [him]." Savona Aff. as to Castro ¶ 12. Castro cannot — and does not — claim knowledge

14

of every investigation in which Findlay was "personally involved." Indeed, Findlay testified (at a different stage of this case) that he personally identified Castro as a "target" of a particular investigation. *See* Suppress. H'rg Trans. 83:23, ECF No. 38. Castro does not contest that assertion head-on.

And even if the omission were misleading, Castro has not suggested it was *intentionally* so. "A misrepresentation or omission is intentional when the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth." *United States v. Awadallah,* 349 F.3d 42, 64 (2d Cir. 2003). "To prove reckless disregard for the truth," a defendant must "prove that *the affiant* in fact entertained serious doubts as to the truth of his allegations." *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013) (emphasis added) (quoting *United States v. Whitley*, 249 F. 3d 614, 621 (7th Cir. 2001)). Castro does not allege such doubts. And while reckless disregard "can sometimes be inferred from the omission of critical information," this is inappropriate where, as here, "the [omitted] information was not necessary to the . . . application." *Id.* at 154-55 (emphasis omitted). The precise details of Findlay's involvement with the FBI investigation were far from critical to Agent Savona's application.

The same is true of the *misstatement* Castro alleges.

15

Castro highlights the affidavit's assertion "that Sergeant Findlay knew Mr. Castro through 'prior law enforcement related encounters' with him." Castro Mem. 9-11 (quoting Savona Aff. as to Castro ¶ 12). Castro argues that this assertion is false because of its use of "the word 'encounters,' in the plural." *Id.* at 10. Castro claims that Findlay's prior testimony reveals that he had, at most, one other "encounter" with Castro — while issuing summonses at a party. *See id.* at 11 (stating that "the only other time that [Findlay] saw Mr. Castro" was "when [Findlay] issued a loud noise summons to a different individual who was hosting a party").

Castro has not made the substantial preliminary showing required for a hearing. First, Castro does not truly allege that the statement in question was false. Instead, in his declaration, Castro attests: "Detective Findlay claimed to have seen me [] at a party on the corner of 17th Avenue and East 28th Street, when a summons was issued. I have no recollection of ever being at a party at that location." Castro Decl. ¶ 7 (citing Suppress. H'rg Tr. 83:16-25). Castro does not state that he was never at a party at that location, only that he has no recollection of being at one.

Second, the challenged statement was immaterial. As noted above, information in an affidavit is material when it is "necessary to the finding of probable cause." *Sandalo*, 70 F.4th

16

at 85.  To make this determination, "a court should disregard the allegedly false statements and determine whether the remaining portions of the affidavit would support probable cause to issue the warrant."  *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000).  "If after doing so there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Sandalo,* 70 F.4th at 85.

Here, even without the description of Findlay's interaction with Castro at the party, the affidavit still credibly alleged that Findlay knew what Castro looked like.  It noted that Findlay became familiar with Castro "due to an FBI [Garrett Mountain Resident Agency] investigation conducted into gang activity by members of the Trinitarios in which [Castro] was a possible target."  Savona Aff. as to Castro ¶ 12.  Findlay testified that he saw Castro in the GMRA's offices.  *See* Suppress. H'rg Trans. 83:4-6.  And Castro does not dispute that he was present at the GMRA.  Instead, he alleges simply that he has "only been" there "one time and [that he] did not see anyone named Findlay when [he] was there."  Castro Decl. ¶ 6.  Obviously, Castro not seeing Findlay does not exclude the possibility of Findlay seeing Castro.

Thus, Castro has failed to make the preliminary showing necessary for a *Franks* hearing.

17

### III. Motion for a Bill of Particulars

Both defendants move under Federal Rule of Criminal Procedure 7(f) for a bill of particulars "identifying each and every person alleged to have had U.S. currency stolen, and how much was allegedly stolen from each person." Singer Affirmation ¶ 12; *see also* Castro Reply Mem. at 10 (requesting the same). The basis for this request is articulated in a single sentence: "This information will allow counsel adequate time to properly prepare for trial." Singer Affirmation ¶ 12.

As the government notes, Opp. Mem. 20, a "[a] bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused," *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999). The proper inquiry is whether the indictment is too vague to inform the defendant of the nature of the charges to allow the preparation of a defense and avoid unfair surprise. *See United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004); *see also United States v. Salazar,* 485 F.2d 1272, 1277 (2d Cir. 1973) ("[A]n indictment is adequate so long as it contains the elements of the offense, sufficiently apprises the defendant of what he must be prepared to meet, and is detailed enough to assure against double jeopardy."). Defendants may not demand a bill of particulars to discover the exact times and places at which an alleged crime occurred, the

18

identities of witnesses, the evidence that will establish the charged crime, or the government's prosecutorial theories.  *See United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975).  "A bill of particulars is not a general investigative tool, a discovery device or a means to compel the government to disclose evidence or witnesses to be offered prior to trial."  *United States v. Gibson,* 175 F. Supp. 2d 532, 537 (S.D.N.Y. 2001).

The defendants have not explained how the indictment fails to set forth the essential elements of the charges or how it is otherwise too vague.  See *United States v. LaMorte*, 744 F. Supp. 573, 575-78 (S.D.N.Y. 1990).  Information such as the amount of currency allegedly stolen from individual witnesses is beyond the scope of Rule 7(f).  Moreover, the use of a bill of particulars for early witness disclosure is circumscribed in criminal cases because of "the danger of intimidation of witnesses, and the greater danger of perjury and subornation of perjury."  *United States v. Persico*, 621 F. Supp. 842, 868-69 (S.D.N.Y. 1985) (denying motion for a bill of particulars in part because of the danger to witnesses).  Thus, this motion is denied.

### IV.   Castro's Motions for Disclosure

Castro asks that (a) all *Brady* material be disclosed "now"; (b) the government disclose all Rule 404(b) evidence at least forty-five days prior to trial; and c) the government

19

provide a list of all its exhibits forty-five days prior to trial. Castro Mem. 12-14. These motions were substantially resolved at the May 10, 2024 and December 9, 2024 status conferences, when I set discovery deadlines in this matter. To the extent they have not been already, the motions are terminated. The deadlines set at the status conferences and in the Court's Individual Rules will prevail.

* * * * *

The Clerk of Court is directed to terminate ECF Nos. 129 and 143.

SO ORDERED.

    /s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:    January 3, 2024
          Brooklyn, New York