UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 UNITED STATES OF AMERICA,

                -against-                        **MEMORANDUM & ORDER**
                                                  21-CR-572 (EK)
 CHARLES POWELL, BRIAN CASTRO, and
 MUSAH COWARD,

                    Defendants.

-------------------------------------x
ERIC KOMITEE, United States District Judge:

          Defendants Charles Powell, Brian Castro, and Musah
Coward are charged with — among other things — committing a
Hobbs Act robbery and discharging a firearm during a crime of
violence.  *See* Superseding Indictment, ECF No. 78.  Trial is
scheduled to begin shortly.  The government has submitted
various motions *in limine*, and the defendants have opposed some
— but not all — of them.[1]  *See* First Gov. Mot., ECF No. 192;
Second Gov. Mot., ECF No. 198.  The Court resolves several of
the motions as follows, and reserves judgment on the rest.

          ***Motion to Admit Evidence of a 911 Call Made After the***
***Charged Robbery***.  The government seeks to admit a single 911
call in which the caller requested medical attention for himself
or others at the scene.  *See* First Gov. Mot. 8.  The government
has represented that this call occurred within minutes of the

---

[1]  Except for the motion pertaining to Coward's rap lyrics, which is at
ECF No. 198, the motions addressed herein can be found at ECF No. 192.

alleged shooting. *See id.* at 11.  And all defendants have indicated that they do not object to its admission on hearsay grounds (though they reserve the right to assert Rule 403 objections if the evidence is cumulative or would work a waste of the jury's time). *See* Trans. of Jan. 8 Status Conf. 7:22-8:11 ("Jan. 8 Trans.").  The call will be admitted on that basis, subject to the government satisfying applicable foundational requirements.

> ***Motion to Admit Body Camera Footage from Certain NYPD Officers***.  The government seeks to admit body camera footage of two NYPD officers that arrived at the scene shortly after the robbery. *See* First Gov. Mot. 13-16.  The defense has indicated that it will not object to admission of the footage on hearsay grounds. *See* Jan. 8 Trans. 8:12-19, 9:7-12.  The evidence will therefore be admitted, again subject to applicable foundational requirements.

> ***Motion to Admit Autopsy Photographs and Video Footage of a Shooting Victim.***  The government seeks to introduce autopsy photos and body camera footage of a victim of the shooting. *See* First Gov. Mot. 16.  The defense offered no objections to this evidence either. *See* Jan. 8 Trans. 10:13-11:20.  The evidence will therefore be admitted, subject to the government satisfying applicable foundational requirements.

*Motion to Admit a Recording of Defendant Castro's Statements to CW-1 as Against Penal Interest*.  The motion is granted as to certain excerpts, with the Court reserving judgment as to other excerpts.  A statement is admissible as against penal interest if the declarant is unavailable to testify and the statement satisfies two additional criteria. Fed. R. Evid. 804(b)(3).  First, at the time the statement was made, it must have "had so great a tendency to . . . expose the declarant to civil or criminal liability" that a "reasonable person in the declarant's position would have made [it] only if the person believed it to be true."  *Id.*  Second, if the statement "tends to expose[s] the declarant to criminal liability" and is offered in a criminal case, it must be "supported by corroborating circumstances that clearly indicate its trustworthiness."  *Id.*  When determining if a recording is a statement against penal interest, a court will analyze each excerpt in the recording individually.  *Williamson v. United States*, 512 U.S. 594, 599-600 (1994).  We discuss certain categories of excerpts, as follows:

*Castro's Discussion of His Own Conduct.*  Castro makes several statements in the recorded conversation about his own conduct.  Among other things, he acknowledges that he "did that lick" (that is, participated in the robbery), states that he "shot [a victim] in the leg," that he "shot twice, . . . hit [a

victim,] . . . and [then] shot him again . . . in the neck," and reports that he kept $5,800 of around $20,000 in proceeds.  CW-1 Recording Trans. 2, 5-7, ECF No. 219-1.  No party disputes that Castro's statements about shooting people at (and stealing money from) the gambling parlor expose him to criminal liability. Accordingly, those statements are admissible against Castro, subject to the government laying a proper foundation and introducing the corroborative evidence they have proffered. That corroboration includes the video footage of the robbery and CW-1's testimony about his relationship with Castro, among other things.[2]  *See* First Gov. Mot. 21.

There is one passage in the transcript in which Castro appears to acknowledge the commission of one or more prior homicides.  *Id.* at 3 (CW-1 asks: "I don't know if that was your first body but tell me . . . you d[id]n't g[e]ot traumatized after y'all did that?"; CASTRO replies: "No . . . I got other people[] out of the way," and states that "my first time, like, I regretted it").  In opposing the admission of the CW-1 recording, Castro's attorney has not singled out this testimony for Rule 403 analysis.  At this point, however, the Court will

---

[2] The rule on statements against penal interest notwithstanding, Castro's statements to CW-1 are of course admissible against him as admissions of an adverse party.  *United States v. Russo*, 302 F.3d 37, 43 (2d Cir. 2002).

not permit that excerpt to be admitted without further argument
and a further ruling specific to that excerpt.

    *Shots Fired by Powell.*  In other excerpts, Castro
talks about the actions of a *codefendant* in a way that exposes
Castro himself to criminal liability.  These excerpts are also
admissible over a hearsay objection.  *See* Powell Mem. in Opp. at
1-2, ECF No. 205.  At one point in the recording, Castro states:
"And [Powell] start[ed] busting . . . like four gunshots . . .
and the homie over there robbing a n****."  CW Recording Trans.
at 5.  This excerpt is admissible because it "describe[s] acts
the declarant and [a] defendant committed jointly."  *United
States v. Miller*, 954 F.3d 551, 563 (2d Cir. 2020); *see also
United States v. Williams*, 506 F.3d 151, 155 (2d Cir. 2007).
Moreover, the context of the recording shows that Castro "was
not attempting to minimize his own culpability, shift blame onto
[Powell], or curry favor with the authorities."  *See id.*  Among
other things, Castro described "his [own] participation in the
[shooting]" in the conversation with CW-1 — including by
acknowledging that he, too, fired multiple shots.  *See id.*; CW-1
Recording Trans. 2, 5-7.  And the statements are corroborated by
the video evidence recovered from the scene.

    Furthermore, these statements are not unduly
prejudicial under Rule 403.  Given that Castro is describing the
charged crime itself, the probative value of the evidence is not

substantially outweighed by any prejudicial effect.  *See Costantino v. David M. Herzog, M.D., P.C.*, 203 F.3d 164, 174 (2d Cir. 2000) ("Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be *unfair*.").[3]

        *Coward's Sale of the Firearm Castro Carried.*  The Court reserves judgment as to the italicized language in the following statement by Castro: "So, I'm hanging the strap on the wall, and that shit's jammin' on me, *that's what why Red [codefendant Coward] sold it*."  CW-1 Recording Trans. 7 (emphasis added).  It remains unclear why the statement that Coward sold the gun — *after* the robbery, according to the government[4] — would itself expose Castro to criminal liability. And to the extent it might have, the Court remains unpersuaded that the Rule 403 balance favors the admission of this statement against defendant Coward.

        To be clear, the Court is only reserving judgment as to Castro's statement that Coward sold the gun.  The first part

---

[3] CW-1 makes one statement about Powell that does not appear to concern the charged crime itself, but rather its aftermath.  CW-1 tells Castro that it is "no wonder I haven't seen Payback [Powell], cuz Payback, I don't know if Payback laying low too . . . ."  CW-1 Recording Trans. 9.  Because CW-1's penal interest is not at stake here, this statement is not admissible absent a further ruling.

[4] *See* Gov. Supp. Br. at 2 n.1, ECF No. 232.

of the sentence above, indicating that the gun jammed on Castro
during the robbery, is admissible under Rule 803(b)(3).

      *Proceeds From the Alleged Robbery.*  Castro's
statements about the proceeds from the robbery are also against
his penal interest.  In the recording, Castro says the robbery
generated $20,000 in proceeds, and that the defendants "broke
bread between [them]," with Castro keeping $5,800.  CW-1
Recording Trans. 2.  This excerpt describes acts committed
jointly with both Powell and Coward.  *Miller*, 954 F.3d at 563.
And it goes to an element of the charged crime.  *United States
v. Taylor*, 596 U.S. 845, 850-51 (2022) (completed and attempted
Hobbs Act robbery both require "inten[t] to unlawfully take or
obtain personal property by means of actual or threatened
force").

      The defense argues that Castro's statements concerning
the amount of proceeds are unaccompanied by the "corroborating
circumstances that clearly indicate its trustworthiness" that
Rule 804(b)(3)(B) requires.  *See* Jan. 8 Trans. 43:6-19; Powell
Resp. to Gov. Supp. Br. 1, ECF No. 240.  Instead, according to
the defense, the excerpt should be understood as Castro
"bragging and trying to earn street cred."  Powell Resp. to Gov.
Supp. Br. 1.

      Circumstances indicating trustworthiness include where
"the statement was made to a person whom the declarant believes

is an ally," *United States v. Saget*, 377 F.3d 223, 230 (2d Cir. 2004); the statement is corroborated by independent evidence, *United States v. Gupta*, 747 F.3d 111, 128-29 (2d Cir. 2014); and the declarant is not attempting to shift blame, but rather taking credit for actions committed jointly. *Saget*, 377 F.3d at 230. The first circumstance is clearly present here. As to the second, Castro's statement is corroborated. The government has proffered that its evidence will show that (1) the premises in question were an illegal gambling and marijuana-sales operation, suggesting that it would have done business in cash; (2) that the defendants went to the gambling parlor intending to steal cash; and (3) that Castro's other descriptions of the robbery are corroborated by surveillance footage, making it more likely the his statements about the proceeds of the robbery were also true. *See* Gov. Supp. Br. 3-5, ECF No. 232. And as noted above, far from blame-shifting, Castro is freely forthcoming about his own involvement in some of the most serious aspects of the alleged crime. Thus, this excerpt, too, is admissible against Castro and his co-defendants, assuming the government lays a proper foundation and introduces the corroborative evidence it has proffered.

As a concluding note, none of the relevant statements in the recorded conversation between Castro and CW-1 implicate the Confrontation Clause. A statement by the subject of an

investigation to a confidential informant is non-testimonial. *Saget*, 377 F.3d at 229; *see also United States v. Farhane*, 634 F.3d 127, 162-63 (2d Cir. 2011) (Confrontation Clause concerns absent when recorded defendant was "unaware that he was speaking to agents for the government or that his statements might later be used at a trial"). And "the Confrontation Clause has no applicability outside of testimonial statements, including in a situation where a defendant's non-testimonial self-incrimination implicates another defendant." *United States v. Tyrell*, 840 F. App'x 617, 623 (2d Cir. 2021). Given that the statements in question are non-testimonial and are admissible over a hearsay objection (from any defendant), their admission will neither offend any codefendant's confrontation rights nor require severance of the codefendants' trials under *Bruton v. United States*, 391 U.S. 123 (1968).

> ***Motion to Preclude Cross-Examination of CW-1 Regarding His Cooperation in Other Law Enforcement Matters***. All parties agreed at the January 8 status conference that the defendants may cross-examine CW-1 about how long he has cooperated with law enforcement, and how much he has been compensated for doing so. *See* Jan. 8 Trans. 59:11-25. At the same time, the defendants stipulated that they will not seek to cross-examine CW-1 about the contents or subjects of other investigations in which he has endeavored to assist law enforcement. *See id.* at 59:17-18.

***Motion to Admit Evidence of Defendants' Prior***

***Uncharged Acts***. This motion is granted in part. The government seeks to admit (1) testimony by CW-2 about prior armed robberies conducted alongside Coward, and (2) testimony by CW-1 about the defendants' drug-dealing activities.[5] *See* First Gov. Mot. 31-37. Specifically, the government seeks to admit testimony by CW-2 that he and Coward jointly robbed a residence, a dice game, and the gambling parlor at issue here in the four years before the charged offense. *See* First Gov. Mot. 31-32. The government also seeks to admit CW-1's testimony that he frequently observed Powell and Castro selling drugs with Coward at the gas station across the street from Coward's house. *See* First Gov. Mot. 36. The latter testimony will be admitted, while the former will be admitted only in part.

When evaluating the admissibility of prior-acts evidence, the Court must first determine whether the prior acts are "intrinsic or direct proof of the charged crimes." *United States v. Midyett*, 603 F. Supp. 2d 450, 462 (E.D.N.Y. 2009). Second, if the prior acts are not intrinsic to the charged

---

[5] Although the government's motion papers speak to evidence of the defendants' "prior drug dealing and robberies," *see* Gov. First Mot. 35-36, the government clarified at the January 8 status conference that it is not seeking to admit evidence of prior robberies by any defendant other than Coward. *See* Jan. 8 Trans. 64:19-66:1. Furthermore, during the January 8 status conference, the Court indicated that it would exclude testimony from CW-2 pertaining to a 2007 assault involving CW-2, Coward, Coward's brother, and another individual. *See id.* at 92:2-94:8. For the reasons stated on the record during that status conference, that testimony is excluded.

conspiracy, the Court must confirm that they are being offered for "a purpose other than to prove the defendant's bad character or criminal propensity." *United States v. Colon*, 880 F.2d 650, 656 (2d Cir. 1989); *see also* Fed. R. Evid. 404(b).  Third, the Court must find that the prior-acts evidence would not be unduly prejudicial under Rule 403.  *Colon*, 880 F.2d at 656.  Finally, the Court must — if asked — "give an appropriate limiting instruction to the jury."  *Id.*

The government conceded at the January 8 status conference that the acts at issue are "not part of the charged conspiracy."  Jan. 8 Trans. 66:14-20; *see also id.* at 67:15-69:21.  Thus, "the proper course is to proceed under Rule 404(b)."  *Midyett*, 603 F. Supp. 2d at 460.

The government has articulated a proper purpose under Rule 404(b).  A court may admit evidence of "extrinsic acts . . . to explain how a criminal relationship developed . . . [and] to help the jury understand the basis for the co-conspirators' relationship of mutual trust."  *United States v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996).  Here, the fact that CW-2 engaged in prior armed robberies with Coward "tend[s] to show the basis for [his] trust of [Coward]" as a partner in future robberies.  *United States v. Harris*, 733 F.2d 994, 1006-07 (2d Cir. 1984).  This is especially true with respect to CW-2's expected testimony about a prior attempt to

11

rob the very same gambling parlor at issue in this case.  *See United States v. Curley*, 639 F.3d 50, 59 (2d Cir. 2011) (prior-act evidence had "greater probative value" where the prior acts "paralleled the charged conduct").  Similarly, CW-1's testimony that the defendants routinely sold drugs at the same gas station "explain[s] [t]he mutual trust that existed between the coconspirators." *United States v. Guerrero*, 882 F. Supp. 2d 463, 492 (S.D.N.Y. 2011); *see also United States v. Diaz*, 176 F.3d 52, 79-80 (2d Cir. 1999).

CW-2's testimony that he and Coward tried previously to rob the same gambling parlor is admissible for an independent reason under Rule 404(b).  The testimony is probative of Coward's "opportunity, intent, preparation, plan, knowledge, . . . absence of mistake, [and] lack of accident." Fed. R. Evid. 404(b)(2).  Specifically, it tends to show that Coward knew how to get to the gambling parlor, how it was laid out, how it operated, and / or how to rob it.  *See United States v. Pizarro*, No. 17-CR-151, 2018 WL 1737236, at *6 (S.D.N.Y. Apr. 10, 2018) (Nathan, J.).[6]

Most (but not all) of the government's prior-act evidence satisfies Rule 403.  CW-1's testimony about the

---

[6] Coward can take the issues of his "opportunity, intent, preparation, plan, knowledge, . . . absence of mistake, or lack of accident" off the table with a "statement to the court of sufficient clarity to indicate that th[ose] issue[s] will not be disputed." *United States v. Colon*, 880 F.2d 650, 659 (2d Cir. 1989).

defendants' prior drug-dealing, while probative of the background of their relationship and the basis for their mutual trust, is not unfairly prejudicial because it involves conduct that is no more "sensational or disturbing than the crimes with which [the defendants have been] charged." *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990). The same logic generally applies to CW-2's testimony about Coward's prior armed robberies, two of which do not appear to have involved any fatalities. *See United States v. Bumagin*, 136 F. Supp. 3d 361, 370 (E.D.N.Y. 2015).[7]

However, CW-2's testimony about the prior robbery of the gambling parlor complicates the analysis. The testimony has significant probative value because it broadly "parallel[s] the charged conduct." *Curley*, 639 F.3d at 59; *see also Bumagin*, 136 F. Supp. 3d at 369. But one aspect of the proffered testimony would extend beyond its proper purpose. The government is seeking to elicit CW-2's testimony that Coward — rather than merely acting as a getaway driver, as he is alleged to have done here — shot a fleeing victim in the back during the prior robbery. *See* First Gov. Mot. 32. This fact is, at best, weakly

---

[7] This ruling should not be read to imply that the government will be free to admit each and every text message concerning "licks," or robberies, exchanged between the defendants. The government has not yet specified which particular exhibits it will seek to admit pursuant to this motion *in limine*. Individual messages may contain exhibit-specific prejudicial material, be cumulative of other evidence, or face additional evidentiary challenges. The same is true for evidence of narcotics trafficking.

probative of the mutual trust between CW-2 and Coward, and risks too much unfair prejudice to Coward.  Accordingly, CW-2 may testify about the prior gambling parlor robbery, but he may not testify about the alleged shooting that occurred during that robbery.

If the defense requests an appropriate limiting instruction as to any of forgoing prior-act evidence, the Court will provide one.  The parties may submit proposed language for any such instruction.

**The Government's Motion to Admit Evidence of Defendants' "Access to Firearms"**.  This motion is granted in part.  The government seeks to introduce (1) evidence of two firearm sales by Coward to CW-1 in June 2022, and (2) digital evidence of each defendant's access to firearms both before and up to one year after the robbery.  First. Gov. Mot. 37-38.  The digital evidence will include photos and videos of the defendants with firearms, as well as text threads between Powell and Coward (and between Castro and unknown individuals) discussing firearms.  *Id.*  The Court ruled at the status conference on January 8 that evidence of the 2022 firearm sales is not admissible.  Jan. 8 Trans. 100:10-21.  And while some of the digital evidence is admissible, the Court reserves further judgment pending a more detailed proffer by the government.

"Evidence showing that a defendant possessed a [firearm] prior to the charged crime is properly admitted to show access to such a weapon." *United States v. Slaughter*, 248 F. App'x 210, 212 (2d Cir. 2007) (citing *United States v. Zappola*, 677 F.2d 264, 270 (2d Cir. 1982)).  However, courts in this circuit have recognized the "high likelihood" that jurors will consider evidence of prior firearm possession as "demonstrating the defendant's propensity to possess guns in general[,] as opposed to demonstrating that he committed the specific charged offense." *See Midyett*, 603 F. Supp. 2d at 459. Thus, courts have often — though not always — treated the simple assertion that prior possession demonstrates a defendant's "access to firearms" as insufficient.  *Id.*; *but cf. United States v. Arroyo*, 600 F. App'x 11, 14 (2d Cir. 2015) (evidence that the defendant "possessed *a* firearm" seven months after a drug sale was "relevant to show that he had an opportunity to possess *a* gun at the time of those sales" (emphasis added)). Instead, to avoid the realm of propensity, judges have required a more specific logical connection between the prior possession and the charged conduct.

The government has traditionally satisfied this requirement via "evidence that the gun involved in the uncharged [prior] possession is the same or similar to the gun involved in the charged offense."  Midyett, 603 F. Supp. 2d at 459

(collecting cases).  But recent case law suggests that is not the only option available to the government.  The Second Circuit's recent decision in *United States v. McCain*, 2023 WL 2335332 (2d Cir. Mar. 3, 2023) is instructive.  There, the defendant fired into a group of people using a "long rifle" he took from his girlfriend's car.  2023 WL 2335332, at *1. Shortly thereafter, a search of the girlfriend's apartment turned up a revolver.  *Id.* at *2.  The government charged the defendant with possessing the revolver, and the district court admitted evidence of his prior use of the (undoubtedly dissimilar) "long rifle."  *Id.* at 1-2.  The Second Circuit agreed that evidence of the prior possession was admissible, because it showed (1) that the defendant "had access to firearms in [his girlfriend's] possession," and (2) "that having recently threatened several people and used a firearm, [the defendant] had a motive to possess the revolver found in the apartment." *Id.* at *4.

Here, the government has proffered evidence suggesting that some of the prior-possession evidence is logically connected to the instant offense.  For instance, the government referenced a video from Powell's iCloud account showing Powell brandishing a firearm he called "[his] little .380."  Gov. Supp. Br. 3 n.4.  Because the government alleges that Powell possessed .380-caliber cartridges, this evidence is admissible.  *See* Jan.

16

8 Trans. 105:2-20; Superseding Indictment at 3.  However, the government has not yet made a similar proffer as to other weapons that appear in the proposed cache of prior-possession evidence.  As such, the Court reserves judgment on the balance of this motion, pending a more specific proffer by the government as to (1) the exhibits it seeks to introduce on this theory, and (2) the logical connection between each such exhibit and the charged offense conduct.

**_Motion to Admit Evidence Relevant to the Honda Civic Used in the Robbery._**  The government seeks to introduce evidence that Coward was driving the Honda Civic used in the charged robbery when it was the subject of a traffic stop in March 2020. First Gov. Mot. 42.  The government argues that this evidence is probative of Coward's connection to the Civic, and has committed to omit any reference to Coward's arrest after the stop.  _Id._ at 42.  The defense does not appear to offer any objection. Accordingly, the Court expects to admit the evidence based on the government's stipulation.

**_The Government's Motion to Admit Evidence of Powell's Flight from Law Enforcement After His Apprehension._**  This motion is denied.  The government seeks to introduce evidence that Powell fled from law enforcement after he was arrested on an outstanding warrant approximately a year after the charged robbery.  First Gov. Mot. 42-43.

"It is well-settled that flight can, in some circumstances, evidence consciousness of guilt." *United States v. Al-Sadawi*, 432 F.3d 419, 424 (2d Cir. 2005).  But the probative value of such evidence depends, among other things, on whether the jury can reasonably infer that the defendant fled because of "consciousness of guilt *concerning the crime charged*."  *Id.* (emphasis added).  A jury could not make such an inference here.  The arrest from which Powell fled occurred long after the charged robbery.  And the government has not proffered persuasive evidence suggesting that Powell knew the crime for which he had been arrested.  *See* Jan. 8 Trans. 106:3-110:22; *United States v. Amuso*, 21 F.3d 1251, 1258-59 (2d Cir. 1994) (government's proposed interpretation of the defendant's flight must be reasonably supported by evidence).[8]  Indeed, the government's own theory is that the defendants in this case have committed *many* crimes, ranging from drug-dealing to armed robbery.

**Motion to Require the Defendants to Disclose Rule 16(b) Discovery and Trial Exhibits to be Introduced During Their Case-in-Chief**.  This motion is granted.  "[T]he term case-in-chief in the Rule 16 context has been interpreted to refer to

---

[8] The government argues that Powell may have overhead the arresting officers say he was being charged in a matter involving the FBI.  *See* Jan. 8 Trans. 110:6-15.  But FBI involvement is a fact of many robberies and some narcotics transactions.

the purpose of the evidence's introduction and not the timing of the evidence's introduction." *United States v. Daskal*, No. 21-CR-110, 2023 WL 9424080, at \*11 (E.D.N.Y. July 12, 2023). So, materials that are "used to substantively challenge the elements of the charged offense rather than only discredit the [government's] [w]itness[es]" must be disclosed under Rule 16(b). *Id.* Accordingly, to the extent it has not done so already, the defense must promptly disclose any substantive, non-impeachment exhibits to the government, regardless of whether it intends to introduce them before or after the government rests. *See id.*

**Motion to Introduce Rap Lyrics Recorded by Defendant Coward.** The government seeks to admit the following rap lyrics recovered from Coward's iCloud account:

- "I grow out in Brooklyn Brownsville be excit [sic] Mecka / blood became my name."

- "Newport became the home."

- "I deatercate [sic — the government reads this as "dedicate"] to VARR & DON."

*See* Second Gov. Mot. 1-2.

The government argues that the statements are probative of Coward's personal connection to Brownsville and his close relationship with CW-2. *See id.* at 3. Coward has objected, arguing that the lyrics are both cumulative and unduly

prejudicial.  *See* Coward Opp. to Gov. Mots. 25-27, ECF No. 206.
The Court is currently inclined to admit the lyrics (largely for
the reasons articulated in the government's letter).  Given that
the defendants have not been heard in court, however, I will
reserve judgment pending further discussion on the record.


      SO ORDERED.



    /s/ Eric Komitee
    ERIC KOMITEE
    United States District Judge


Dated:    January 13, 2025
        Brooklyn, New York